Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| DAVID P.<br><br>Plaintiff,<br><br>vs.<br><br>BLUECROSS BLUESHIELD of ILLINOIS, COMMONSPIRIT HEALTH, and the CATHOLIC HEALTH INITIATIVES MEDICAL PLAN,<br><br>Defendants. | COMPLAINT |

Plaintiffs David P. ("David") through his undersigned counsel, complains and alleges against Defendants Blue Cross Blue Shield of Illinois ("BCBSIL"), CommonSpirit Health (the "Plan Admin") and the Catholic Health Initiatives Medical Plan ("the Plan") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. David is a natural person residing in King County, Washington.

1

2. BCBSIL is an independent licensee of the nationwide BlueCross and BlueShield network of providers. BCBSIL acted as third-party claims administrator, as well as the fiduciary under ERISA, for the Plan during the treatment at issue in this case.

3. At all relevant times BCBSIL acted as agent for the Plan and the Plan Admin.

4. The Plan Admin is the designated administrator for the Plan.

5. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). David was a participant in the Plan and his son J.P. was a beneficiary of the Plan at all relevant times. In February of 2023, J.P. was killed in a fatal traffic accident.

6. J.P. received medical care and treatment at Triumph Youth Services ("Triumph") beginning on January 25, 2021. BCBSIL was responsible to cover this treatment until January 31, 2022, when David's coverage under BCBSIL ended.

7. Triumph is a licensed treatment facility located in Box Elder County Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

8. BCBSIL denied claims for payment of J.P.'s medical expenses in connection with his treatment at Triumph.

9. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

10. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because BCBSIL does business in Utah through its network of affiliates, because the Plan Admin owns and operates several hospitals in Utah, and because the treatment at issue took place in Utah.

11. In addition, litigating the case outside of Utah will likely lead to substantially increased litigation costs David will be responsible to pay and that would not be incurred if venue of the case remains in Utah.

12. The remedies David seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), for an award of statutory damages against the Plan Admin pursuant to 29 U.S.C. §1132(c) based on the failure of the agents of the Plan Admin, to produce within 30 days documents under which the Plan was established or operated, an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### Triumph

13. J.P. was admitted to Triumph on January 25, 2021, due to issues which included theft, drug and alcohol abuse, anxiety, family conflict, encounters with the police, difficulty concentrating, and hallucinations. BCBSIL denied payment for this treatment.

14. On September 7, 2021, David submitted an appeal of the denial of payment. He wrote that when J.P. was admitted to Triumph, the facility attempted to obtain preauthorization but was told that no preauthorization would be granted as BCBSIL required residential treatment centers to have nursing staff on-site 24/7.

15. When asked to provide a copy of this denial in writing, BCBSIL refused.

16. David stated that he had also received Explanation of Benefits statements denying payment for a variety of reasons unrelated to 24/7 nursing care. He summarized the denials in a table with the following information:

| Dates of Service | Denial Rationale |
| --- | --- |
| 01/25/2021 – 01/31/2021;<br>03/01/2021 – 03/31/2021 | Coverage for this service has been denied because the provider was not eligible to bill this type of service according to the provider's credentials, or the service was not within the scope of the provider's practice under the provider's license or applicable medical standards or guidelines |
| 02/01/2021 – 02/28/2021;<br>05/01/2021 – 05/31/2021;<br>06/01/2021 – 06/30/2021 | We have asked your health care provider for more information. We will complete your claim when this information is received. No payment for this service can be made at this time. |
| 04/01/2021 – 04/30/2021 | This service is excluded under your Health Care Plan. Please refer to your benefit booklet for specific coverage information and exclusions under your contract. |

17. David wrote that he was entitled to certain protections under ERISA during the review process, including a full, fair, and thorough review of the denial conducted by appropriately qualified reviewers which took into account all of the information he provided, which gave him the specific reasons for the adverse determination, referenced the specific plan provisions on which the denial was based, and which gave him the information necessary to perfect the claim.

18. He asked that the reviewer be knowledgeable concerning generally accepted standards and clinical best practices for residential programs in the State of Utah and that they be trained in the details of MHPAEA in order to appropriately respond to the arguments he raised concerning a violation of the statute.

19. He also asked to be provided with a physical copy of any documentation related to the denial, including case notes or reports.

20. David argued that J.P.'s treatment at Triumph was a covered benefit under the terms of the Plan. He quoted the definition of a residential treatment facility in the summary plan description which stated:

> Residential Treatment Facilities... means a duly licensed facility that treats an intermediate level of substance abuse on both an inpatient and outpatient basis. It provides a detailed regimen that includes full-time residence and full-time participation by the patient within a residential treatment facility which provides room and board, evaluation and diagnosis, counseling, referral and orientation to specialized community resources.[1]

21. David wrote that Triumph was licensed by the State of Utah to provide residential services and was operating within the scope of that license. He provided a copy of Triumph's license with the appeal.

22. David wrote that he was unable to find any requirement listed in any of the documentation he possessed which listed a requirement for 24/7 onsite nursing services for residential treatment care.

23. He asked BCBSIL to elaborate on why it was denying payment based on a requirement which simply did not exist.

24. David wrote that J.P.'s treatment was medically necessary, and he included a copy of J.P.'s medical records with the appeal.

25. David contended that the denial of payment appeared to constitute a violation of MHPAEA He wrote that MHPAEA compelled insurers to ensure that behavioral health benefits were offered at parity with analogous medical or surgical benefits.

---

[1] In this case the ellipsis is present in the original and solely serves to separate the term "Residential Treatment Facilities" from its definition, it does not here denote that any content was removed. The definition is quoted in its entirety.

5

26. He identified skilled nursing, subacute rehabilitation, and hospice care as some of the medical or surgical analogues to the treatment J.P. received.

27. David stated that it appeared BCBSIL was imposing limitations based on facility type, provider specialty and other "as applied" criteria to limit the availability of coverage for residential treatment care in violation of MHPAEA.

28. Although he could find no requirement for 24/7 onsite nursing care in the actual terms and conditions of his plan, David alleged that inasmuch as BCBSIL denied treatment for this reason, it violated MHPAEA as it did not do so for analogous medical or surgical services.

29. He asked BCBSIL to perform a MHPAEA compliance analysis to ensure the Plan was acting in accordance with the statute and asked to be provided with physical copies of the results of this analysis.

30. In the event the denial was upheld, David asked to be provided with a copy of all documents under which the Plan was operated, including all governing plan documents, the summary plan description, any insurance policies in place for the benefits he was seeking, any administrative service agreements that existed, any clinical guidelines or medical necessity criteria utilized in the determination (along with their medical or surgical equivalents, whether or not these were used), together with any reports or opinions about the claim from any physician or other professional, along with their names, qualifications, and denial rates (collectively the "Plan Documents").

31. In a letter dated March 11, 2022, BCBSIL upheld the denial of payment for J.P.'s treatment. The letter stated that "Triumph Youth Services does not meet our requirements to be considered for Residential Treatment Center Coverage based on The American

Society of Addiction Medicine criteria, which is state mandated medical necessity criteria for determining coverage."

32. The letter then cited to the definition of residential treatment facilities in the summary plan description. The cited text is identical to the text David quoted above and stated that residential treatment facilities:

> means a duly licensed facility that treats an intermediate level of substance abuse on both an inpatient and outpatient basis. It provides a detailed regimen that includes full-time residence and full-time participation by the patient within a residential treatment facility which provides room and board, evaluation and diagnosis, counseling, referral and orientation to specialized community resources.

33. The letter did not specify which aspect of this definition would have excluded coverage for J.P.'s treatment at Triumph.

34. David also received a letter from the Plan Admin dated May 16, 2022, stating that the claims had been denied due to a lack of preauthorization, but if a request was received from J.P.'s physician within sixty days, a retrospective review would be performed.

35. On September 1, 2022, David submitted a level two appeal of the denial of payment for J.P.'s treatment.

36. David pointed out that BCBSIL had not listed the correct dates of service in its denial, had not addressed his allegations concerning a violation of MHPAEA, had failed to provide him with a clear and specific justification for the denial, had not meaningfully responded to the arguments he raised, had not utilized an appropriately qualified reviewer, and had not given him the information necessary to perfect the claim.

37. David noted that BCBSIL justified its denial by making a vague reference to American Society of Addiction Medicine ("ASAM") criteria as well as the definition of a residential treatment center, however BCBSIL made no attempt to clarify which specific

7

requirements were allegedly not met. He questioned how he was supposed to effectively advocate on behalf of his son, when BCBSIL withheld this information.

38. David pointed out that the ASAM criteria primarily pertained to the treatment of substance use disorders, that J.P. was also receiving mental health treatment, and that it was inappropriate to base the denial solely on criteria meant for substance use treatment.

39. David again asked BCBSIL to respond to all the arguments he made during the appeal. He again asked to be provided with a copy of the Plan Documents.

40. In a letter dated September 12, 2022, BCBSIL upheld the denial of payment. The letter stated that Triumph did not meet the requirements to be considered a residential treatment facility. The letter then once more quoted the definition of a residential treatment facility but did not specify which provision(s) Triumph allegedly failed to meet.

41. BCBSIL did not produce the Plan Documents David requested, but it did provide a very limited subset of the materials David asked for including some of its internal notes. These notes show two instances of BCBSIL evaluating the claim, the first, dated July 1, 2021, states that Triumph "appears to be a Wilderness Program based on review of licensure on file."

42. The notes further stated that no medical necessity review was performed and the claim was denied due to no "confirmation of 24-hour nursing presence and M.D. access is required."

43. A second note dated May 19, 2021, pertains to another evaluation of J.P.'s treatment at Triumph. This time, it stated that Triumph appeared to be a residential treatment facility based on its licensure, but again stated that no review was performed due to a supposed lack of 24-hour nursing presence and M.D. access.

44. The production also included notes regarding a phone call, and a copy of the MCG Health Behavioral Care 25th edition criteria for residential treatment. Notably these criteria allow for residential treatment if there is "[n]o anticipated need for around-the-clock medical or nursing monitoring," "medical or nursing care can easily be provided if need arises," or around-the-clock care is required, "but intensive treatment and resources of licensed hospital are not anticipated."

45. It is unclear why, when asked to provide the criteria it relied upon to deny payment, BCBSIL produced criteria which do not mandate 24-hour nursing care, despite this ostensibly being its justification for denying care.

46. BCSBIL also claimed to have utilized ASAM criteria in its denials, but when asked to provide a copy of the criteria used, it produced MCG criteria.

47. As he had yet to receive the majority of the materials he requested, David made one last attempt by writing a letter directly to the Plan Admin and to BCBSIL. In a letter dated November, 5, 2022, David requested:

> Disclosure of the identities of all individuals with clinical or medical expertise who evaluated the treatment for my son, [J.P.], at Triumph Youth Services, copies of those individuals' curriculum vitae, copies of any memoranda, emails, reports, or other documents reflecting the rationale of the reviewers in denying coverage for [J.P.]'s claim;
> • A complete copy of both the medical necessity criteria utilized by Blue Cross Blue Shield of Illinois in determining that [J.P.]'s treatment was not medically necessary and that treatment for him at a lower level of care was appropriate;
> • A complete copy of the medical necessity criteria utilized by the Plan for skilled nursing facilities, sub-acute inpatient rehabilitation treatment, and inpatient hospice treatment. This is necessary to allow me to carry out an evaluation of whether the Plan has complied with the requirements of the federal Mental Health Parity and Addiction Equity Act;
> • Copies of documents identifying the self-compliance analysis the Plan and Blue Cross Blue Shield of Illinois have carried out to determine the extent to which they are complying with the federal Mental Health Parity and Addiction Equity Act.

- Complete copies of any and all internal records compiled by Blue Cross Blue Shield of Illinois and CommonSpirit Health in connection with [J.P.]'s claim including, but not limited to, telephone logs, memoranda, notes, emails, correspondence, or any other communications;
- A copy of the summary plan description, master plan document, certificate of insurance, insurance policy, and any other document under which [J.P.]'s insurance plan is operated;
- Copies of any and all administrative service agreements, contracts or other documents which described and defined the relationship, rights and obligations of and between you, CommonSpirit Health, and Blue Cross Blue Shield of Illinois;
- Copies of any and all documents outlining the level of accreditation required for residential treatment programs;
- Copies of any and all documents showing whether analogous levels of care to residential treatment programs also require these levels of accreditation;
- Copies of documents identifying the process, strategies, evidentiary standards, or other factors the Plan used to determine that the treatment at Triumph Youth Services was experimental and investigational;
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to determine whether treatment at sub-acute inpatient programs for medical or surgical treatment is experimental and investigational; and
- Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan

48. David sent his requests certified mail, return receipt requested. The letter to the Plan Admin was confirmed to be received on November 14, 2022, and the letter to BCBSIL was confirmed to be received on November 16, 2022.

49. Neither the Plan Admin nor BCBSIL responded to these requests for documents.

50. David exhausted his pre-litigation appeal obligations under the Plan and ERISA.

51. The denial of benefits for J.P.'s treatment was a breach of contract and caused David to incur medical expenses that should have been paid by the Plan in an amount totaling over $180,000.

//

//

# FIRST CAUSE OF ACTION

## (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

52. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as BCBSIL, acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

53. BCBSIL and the Plan failed to provide coverage for J.P.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

54. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

55. The denial letters produced by BCBSIL do little to elucidate whether BCBSIL conducted a meaningful analysis of the Plaintiff's appeals or whether it provided him with the "full and fair review" to which he is entitled.

56. BCBSIL failed to substantively respond to the issues presented in David's appeals and did not meaningfully address the arguments or concerns that David raised during the appeals process.

57. BCBSIL was unwilling or unable to cite to any plan provision supporting its justification for the denial of payment. BCBSIL's notes show basic factual errors, such as

//

classifying Triumph as a wilderness program. The notes also reflect that no medical necessity review was actually performed.

58. BCBSIL consistently stated that Triumph "does not meet our requirements" but refused to identify in writing what these requirements were. Despite numerous attempts, BCBSIL would not clarify why it refused to pay for J.P.'s treatment.

59. BCBSIL and the agents of the Plan breached their fiduciary duties to J.P. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in David and J.P.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of J.P.'s claims.

60. The actions of BCBSIL and the Plan in failing to provide coverage for J.P.'s medically necessary treatment are a violation of the terms of the Plan and ERISA's claims procedure regulations.

61. While the presentation of alternative or potentially inconsistent claims in the manner that David states in his first, second, and third causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, David contends he is entitled to relief and appropriate remedies under each cause of action.

## SECOND CAUSE OF ACTION

**(Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))**

62. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA. The obligation to comply with both ERISA and MHPAEA is part of BCBSIL's fiduciary duties.

63. MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

64. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits and makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

65. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity; refusal to pay for higher-cost treatment until it can be shown that a lower-cost treatment is not effective; and restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A), (F), and (H).

66. The facility eligibility criteria used by BCBSIL for the intermediate level mental health treatment benefits at issue in this case are more stringent or restrictive than the facility eligibility criteria the Plan applies to analogous intermediate levels of medical or surgical benefits.

67. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for J.P.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities.

68. When BCBSIL and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice.

69. BCBSIL and the Plan evaluated J.P.'s mental health claims using criteria, or at least applications of criteria, that deviate from generally accepted standards of medical practice. This process resulted in a disparity because the Plan denied coverage for mental health benefits when the analogous levels of medical or surgical benefits would have been paid.

70. Although it never actually identified where the requirement came from, nor did it actually reference a 24/7 requirement in its denial letters, internal notes and verbal conversations show that BCBSIL relied on an exclusion for residential treatment centers which did not offer 24/7 on-site nursing care as the basis for its denial of J.P.'s treatment at Triumph.

71. MHPAEA violations can be either facial violations or "as applied" violations. As BCBSIL obscures the source of its denial, it is impossible to determine whether BCBSIL is engaging in an as applied violation only, or if it also has a written policy that it simply refuses to disclose.

72. The Plan purports to rely on generally accepted standards of medical practice when it evaluates the medical necessity of covered benefits.

73. Triumph is a licensed treatment facility and provides treatment in a manner that complies with generally accepted standards of medical practice.

74. Generally accepted standards of medical practice are largely codified and enforced by the appropriate licensing, regulatory, and accreditation entities.

75. In the case of residential treatment for mental health and substance use disorders, no licensing, regulatory, or accreditation entities require 24-hour onsite nursing services as part of generally accepted standards of care.

76. Through its imposition of requirements which are stricter than those dictated by generally accepted standards of care as reflected in the licensing, regulatory, and accreditation entity requirements, BCBSIL violates MHPAEA.

77. BCBSIL violates MHPAEA because it relies on generally accepted standards of care and the standards of licensing, regulatory, and accreditation entities to develop its medical necessity guidelines for intermediate level medical or surgical facilities but holds residential treatment to a stricter standard beyond what is advised and considered appropriate by the relevant licensing, regulatory, and accreditation entities.

78. A parity violation can occur in this manner even when the terms at issue are facially neutral.

79. The MHPAEA violation occurs because 24/7 onsite nursing care is often part of generally accepted standards of care for intermediate level inpatient medical and surgical treatment but does not fall within generally accepted standards of care and is neither expected nor required for residential treatment facilities.

80. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the coverage criteria utilized by the Plan and BCBSIL, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

81. BCBSIL and the Plan did not produce the documents David requested to evaluate whether the Defendants' denial of coverage was appropriate and whether their actions complied with MHPAEA, nor did they address in any substantive capacity David's allegations that BCBSIL and the Plan were not in compliance with MHPAEA.

82. In fact, despite David's request that BCBSIL and the Plan conduct a parity compliance analysis and despite the direction from the Department of Labor that ERISA plan and claim administrators perform parity compliance analyses, BCBSIL and the Plan have not provided David with any information about whether they have carried out any parity compliance analysis and, to the extent that any such analysis was performed, BCBSIL and the Plan have not provided David with any information about the results of this analysis.

83. The violations of MHPAEA by BCBSIL and the Plan are breaches of fiduciary duty and also give David the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

    (a) A declaration that the actions of the Defendants violate MHPAEA;

    (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

(e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of the Defendants' violations of MHPAEA;

(f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to David as make-whole relief for his loss;

(g) An order equitably estopping the Defendants from denying David's claims in violation of MHPAEA; and

(h) An order providing restitution from the Defendants to David for his loss arising out of the Defendants' violation of MHPAEA.

## THIRD CAUSE OF ACTION

**(Request for Statutory Penalties Under 29 U.S.C. §1132(a)(1)(A) and (c))**

84. BCBSIL, acting as agent for the Plan Admin, is obligated to provide to participants and beneficiaries of the Plan within 30 days after request, documents under which the Plan was established or operated, including but not limited to any administrative service agreements between the Plan and BCBSIL, the medical necessity criteria for mental health and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facilities.

85. In spite of David's requests during the appeal process for BCBSIL to produce the documents under which the Plan was operated, and his instructions to forward that request to the appropriate entity if BCBSIL was not acting on behalf of the Plan Admin in this regard, BCBSIL repeatedly failed to produce to the Plaintiff the documents under which the Plan was operated, including but not limited to any administrative service agreements between the Plan and BCBSIL, the medical necessity criteria for mental

health and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facility treatment within 30 days after they had been requested.

86. After BCBSIL repeatedly failed to provide these materials, David sent one final letter dated November 5, 2022, to both BCBSIL and the Plan Admin again requesting the documents which he was statutorily entitled to receive upon request.

87. Despite receiving the David's letters, BCBSIL and the Plan Admin failed to respond to David's request for documents.

88. The failure of the Plan Admin and its agent BCBSIL to produce the documents under which the Plan was operated, as requested by David, within 30 days of his request for those documents provides the factual and legal basis under 29 U.S.C. §1132(a)(1)(A) and (c) for this Court to impose statutory penalties against the Plan Admin up to $110 per day from 30 days from the date of each of these letters to the date of the production of the requested documents.

89. In addition, David is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, David seeks relief as follows:

1. Judgment in the total amount that is owed for J.P.'s medically necessary treatment at Triumph under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in David's Second Cause of Action;

3. For an award of statutory penalties of up to $110 a day against the Plan Admin after the first 30 days for each instance of the Plan Admin and its agent BCBSIL's failure

or refusal to fulfill their duties, to provide David with the documents he had requested.

4. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

5. For such further relief as the Court deems just and proper.

DATED this 3rd day of September, 2023.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiff

County of Plaintiff's Residence:
King County, Washington